# Exhibit 9

# VI. COORDINATION AND COOPERATION

### A. International Standby Practices (ISP98): Report of the Secretary-General
### (A/CN.9/477)   [Original: English]

1. At its thirty-second session in 1999, the Commission considered, on the basis of a report of the Secretary-General,[1] a request by the Director of the Institute of International Banking Law and Practice, Inc. to consider endorsing for worldwide use the new Rules on International Standby Practices (ISP98) (letter of request of 3 March 1999 is reproduced in annex I). However, owing to the fact that late publication of that report had prevented some delegations from carrying out consultations, the Commission felt obliged to postpone consideration of endorsement until the thirty-third session in 2000.

2. The official text of ISP98 in English, which has been endorsed by the International Chamber of Commerce (ICC) and issued as ICC publication No. 590, is reproduced in annex IV. Translations into Chinese, French, Russian or Spanish are reproduced in annex IV of the respective language versions of this note. Translations into Bulgarian, Hebrew, Korean and Turkish have been prepared and published. Translations into German, Italian, Japanese and Thai are currently being prepared.

3. As stated on the cover of that publication,

"ISP98 fills an important gap in the market place. Though standby letters of credit have similarities with commercial letters of credit and other financial instruments, there are significant differences in scope and practice. Moreover, it is recognized that the ICC's Uniform Customs and Practice for Documentary Credits (UCP), which is internationally accepted for commercial letters of credit, is not appropriate for all forms of standbys. A new set of Rules was required for this workhorse of commerce and finance, which, in terms of value, exceeds commercial credits by a ratio of 5:1.

"ISP98 reflects a distillation of practices from a wide range of standby users—bankers, merchants, rating agencies, corporate treasurers, credit managers, government officials and banking regulators. Like the UCP for commercial credits, ISP98 is destined to become the standard for the use of standbys in international transactions."

4. By way of general background, it may be noted that the subject of documentary credits and bank guarantees has been a topic in which the Commission has taken an interest since the time of its inception. The Commission endorsed the 1962 version of the Uniform Customs and Practice for Documentary Credits (UCP) at its second session in 1969,[2] the 1974 version at its eighth session in 1975,[3] the 1983 version at its seventeenth session in 1984[4] and the 1993 version at its twenty-seventh session in 1994.[5]

5. In view of the close link between ISP98 and the 1995 United Nations Convention on Independent Guarantees and Stand-by Letters of Credit, the Secretary of the Commission participated in the preparation of ISP98 so as to ensure consistency between these two supplementary texts. His prologue to the ICC publication is reproduced in annex III. Additional information on the reasons for the preparation of ISP98 and about its salient features may be deduced from the preface contained in annex II.

---

[1]A/CN.9/459. The present note largely reproduces A/CN.9/459, since at the thirty-second session of the Commission only the English and the French versions of ISP98 were available.

[2]Report of the United Nations Commission on International Trade Law on the work of its second session, *Official Records of the General Assembly, Twenty-fourth Session, Supplement No. 18* (A/7618), para. 95.

[3]Report of the United Nations Commission on International Trade Law on the work of its eighth session, *Official Records of the General Assembly, Thirtieth Session, Supplement No. 17* (A/10017), para. 41.

[4]Report of the United Nations Commission on International Trade Law on the work of its seventeenth session, *Official Records of the General Assembly, Thirty-ninth Session, Supplement No. 17* (A/39/17), para. 129.

[5]Report of the United Nations Commission on International Trade Law on the work of its twenty-seventh session, *Official Records of the General Assembly, Forty-ninth Session, Supplement No. 17* (A/49/17), para. 230.

## ANNEX I

**Letter of Professor James E. Byrne, Director of the Institute of International Banking Law and Practice, Inc**

I am writing to request endorsement of the International Standby Practices (ISP98) by the United Nations Commission on International Trade Law.

These private rules of practice are intended to apply to standby letters of credit. The idea to prepare such rules was conceived during the deliberations of the UNCITRAL Working Group on

Case 1:20-cv-08157-GBD   Document 24-9   Filed 12/23/20   Page 3 of 16

580                       Yearbook of the United Nations Commission on International Trade Law, 2000, vol. XXXI

International Contract Practices which resulted in the United Nations Convention on Independent Guarantees and Standby Letters of Credit ("the Convention"). These rules were deliberately formulated to complement the Convention whose use is recommended in their Official Preface. The ISP98 drafting process itself was undertaken in regular consultation with the UNCITRAL secretariat and the Institute has used occasions to promote ISP98 as an opportunity also to promote adoption of the Convention.

ISP98 became effective 1 January 1999. It has been endorsed by the International Financial Services Association and the ICC Commission on Banking Technique and Practice, and issued as ICC publication No. 590. It is currently being used and promoted by major banks which issue standby letters of credit, and is expected to become the world standard within the next few years.

Because of the close links between ISP98 and the Convention, and due to UNCITRAL's past practice of endorsing similar rules of practice, such as UCP500 and Incoterms 1990, the Institute formally requests that the Commission consider endorsement of ISP98.

## ANNEX II

© 1998 Institute of International Banking Law & Practice, Inc.

**All Rights Reserved. Reproduction of any part of this work by any means without the express written permission is prohibited.**

**Approved by the International Financial Services Association and the ICC Banking Commission**

### PREFACE

The International Standby Practices (ISP98) reflects generally accepted practice, custom, and usage of standby letters of credit. It provides separate rules for standby letters of credit in the same sense that the Uniform Customs and Practice for Documentary Credits (UCP) and the Uniform Rules for Demand Guarantees (URDG) do for commercial letters of credit and independent bank guarantees.

The formulation of standby letter of credit practices in separate rules evidences the maturity and importance of this financial product. The amounts outstanding of standbys greatly exceed the outstanding amounts of commercial letters of credit. While the standby is associated with the United States where it originated and where it is most widely used, it is truly an international product. Non-U.S. bank outstandings have exceeded those of U.S. banks in the United States alone. Moreover, the standby is used increasingly throughout the world.

Standbys are issued to support payment, when due or after default, of obligations based on money loaned or advanced, or upon the occurrence or non-occurrence of another contingency.

For convenience, standbys are commonly classified descriptively (and without operative significance in the application of these Rules) based on their function in the underlying transaction or other factors not necessarily related to the terms and conditions of the standby itself. For example:

A "Performance Standby" supports an obligation to perform other than to pay money, including for the purpose of covering losses arising from a default of the applicant in completion of the underlying transactions.

An "Advance Payment Standby" supports an obligation to account for an advance payment made by the beneficiary to the applicant.

A "Bid Bond/Tender Bond Standby" supports an obligation of the applicant to execute a contract if the applicant is awarded a bid.

A "Counter Standby" supports the issuance of a separate standby or other undertaking by the beneficiary of the counter standby.

A "Financial Standby" supports an obligation to pay money, including any instrument evidencing an obligation to repay borrowed money.

A "Direct Pay" Standby supports payment when due of an underlying payment obligation typically in connection with a financial standby without regard to a default.

An "Insurance Standby" supports an insurance or reinsurance obligation of the applicant.

A "Commercial Standby" supports the obligations of an applicant to pay for goods or services in the event of non-payment by other methods.

In the past, many standbys have been issued subject to the UCP even though it was intended for commercial letters of credit. The UCP reinforced the independence and documentary character of the standby. It also provided standards for examination and notice of dishonor and a basis to resist market pressures to embrace troublesome practices such as the issuance of standbys without expiration dates.

Despite these important contributions, it has long been apparent that the UCP was not fully applicable nor appropriate for standbys, as is recognized in UCP 500 Article 1 which provides that it applies "to the extent to which they may be applicable." Even the least complex standbys (those calling for presentation of a draft only) pose problems not addressed by the UCP. More complex standbys (those involving longer terms or automatic extensions, transfer on demand, requests that the beneficiary issue its own undertaking to another, and the like) require more specialized rules of practice. The ISP fills these needs.

The ISP differs from the UCP in style and approach because it must receive acceptance not only from bankers and merchants, but also from a broader range of those actively involved in standby law and practice—corporate treasurers and credit managers, rating agencies, government agencies and regulators, and indenture trustees as well as their counsel. Because standbys are often intended to be available in the event of disputes or applicant insolvency, their texts are subject to a degree of scrutiny not encountered in the commercial letter of credit context. As a result, the ISP is also written to provide guidance to lawyers and judges in the interpretation of standby practice.

Differences in substance result either from different practices, different problems, or the need for more precision. In addition, the ISP proposes basic definitions should the standby permit or require presentation of documents by electronic means. Since standbys infrequently require presentation of negotiable documents, standby practice is currently more conducive to electronic presentations, and the ISP provides definitions and rules encouraging such presentations. The development of S.W.I.F.T. message types for the ISP is anticipated.

The ISP, like the UCP for commercial letters of credit, simplifies, standardizes, and streamlines the drafting of standbys, and provides clear and widely accepted answers to common problems. There are basic similarities with the UCP because standby and commercial practices are fundamentally the same. Even where the rules overlap, however, the ISP is more precise, stating the intent implied in the UCP rule, in order to make the standby more dependable when a drawing or honor is questioned.

Like the UCP and the URDG, the ISP will apply to any independent undertaking issued subject to it. This approach avoids the impractical and often impossible task of identifying and distinguishing standbys from independent guarantees and, in many cases, commercial letters of credit. The choice of which set of rules to select is, therefore, left to the parties—as it should be. One may well choose to use the ISP for certain types of standbys, the UCP for others, and the URDG for still others. While the ISP is not intended to be used for dependent undertakings such as accessory guarantees and insurance contracts, it may be useful in some situations in indicating that a particular undertaking which might otherwise be treated as dependent under local law is intended to be independent.

For the ISP to apply to a standby, an undertaking should be made subject to these Rules by including language such as (but not limited to):

This undertaking is issued subject to the International Standby Practices 1998.
or
Subject to ISP98.

Although the ISP can be varied by the text of a standby, it provides neutral rules acceptable in the majority of situations and a useful starting point for negotiations in other situations. It will save parties (including banks that issue, confirm, or are beneficiaries of standbys) considerable time and expense in negotiating and drafting standby terms.

The ISP is designed to be compatible with the United Nations Convention on Independent Guarantees and Stand-by Letters of Credit (which represents a useful and practical formulation of basic standby and independent guarantee law) and also with local law, whether statutory or judicial, and to embody standby letter of credit practice under that law. If these rules conflict with mandatory law on issues such as assignment of proceeds or transfer by operation of law, applicable law will, of course, control. Nonetheless, most of these issues are rarely addressed by local law and progressive commercial law will often look to the practice as recorded in the ISP for guidance in such situations, especially with respect to cross border undertakings. As a result, it is expected that the ISP will complement local law rather than conflict with it.

The ISP is intended to be used also in arbitration as well as judicial proceedings (such as the expert based letter of credit arbitration system developed by the International Center for Letter of Credit Arbitration (ICLOCA) Rules or general commercial ICC arbitration) or with alternative methods of dispute resolution. Such a choice should be made expressly and with appropriate detail. At a minimum, it can be made in connection with the clause relating to ISP98, for example. This undertaking is issued subject to ISP98, and all disputes arising out of it or related to it are subject to arbitration under ICLOCA Rules (1996).

Although translations of the ISP into other languages are envisioned and will be monitored for integrity, the English text is the official text of the ISP in the event of disputes.

The ISP is the product of the work of the ISP Working Group under the auspices of the Institute of International Banking Law & Practice, Inc. which interacted with hundreds of persons over a five year period, and has benefited from comments received from individuals, banks, and national and international associations. In particular, the participation of the International Financial Services Association (formerly the USCIB) and the Ad Hoc Working Group under the chairmanship of Gary Collyer (which led to its endorsement by the ICC Banking Commission) is gratefully recognized. In addition, the sponsorship and support of Citibank N.A., The Chase Manhattan Bank, ABN-AMRO, Baker & McKenzie, and the National Law Center for Inter-American Free Trade is acknowledged. Perhaps the greatest significance of the ISP is that its creation marks a new chapter in the collaboration between the international banking operations community and the legal community at an international level. In this respect, the active role played in this process by the secretariat of the United Nations Commission on International Trade Law has been invaluable.

The ISP is drafted as a set of rules intended for use in daily practice. It is not intended to provide introductory information on standbys and their uses. While it is recognized that specific rules would benefit from explanatory comments, such comments are not appended to the ISP because the resulting work would be too cumbersome for daily use. Instead, introductory materials and Official Comments are available in the *Official Commentary on the International Standby Practices (ISP98)*. For further information on support materials and developments on the ISP and to pose queries, consult the ISP98 website: *www.ISP98.com.*

To address inevitable questions, to provide for official interpretation of the rules, and to assure their proper evolution, the Institute of International Banking Law & Practice, Inc. has created a Council on International Standby Practices which is representative of the several constituencies which have contributed to the ISP and has charged it with the task of maintaining the integrity of the ISP in cooperation with the Institute, the ICC Banking Commission, the IFSA, and various supporting organizations.

|  |  |  |
|---|---|---|
| James G. Barnes<br>Baker & McKenzie<br>Vice Chair<br>ISP Working Group | Professor James E. Byrne<br>Director,<br>Institute of International Banking<br>Law & Practice, Inc.<br>Chair & Reporter<br>ISP Working Group | Gary W. Collyer<br>Chair, ICC Ad Hoc Working<br>Group & Technical Adviser to<br>the ICC Banking Commission |

Case 1:20-cv-08157-GBD   Document 24-9   Filed 12/23/20   Page 5 of 16

582                  Yearbook of the United Nations Commission on International Trade Law, 2000, vol. XXXI

# ANNEX III

## PROLOGUE

### By Gerold Herrmann, Secretary

### United Nations Commission on International Trade Law (UNCITRAL)

It was an extremely interesting and enriching experience for me to assist in drafting ISP98. This participation allowed me to witness (and now bear witness to) the very thorough and pragmatic drafting process in a superbly selected group, with representatives of all interested sectors actively involved in standby letter of credit practice such as: bankers, especially those responsible for letter of credit operations and global trade transactions, bank counsel, attorneys, academics, regulators, government officials, corporate treasurers, and likely influential beneficiaries. The treasure trove of experience and expertise and the diversity of interests and perspectives proved invaluable in determining—as was continuously done by examining concrete practical examples—whether on a given issue an operational rule would be desirable and useful and, if so, which solution would work best and reflect good practice.

Continued participation in the preparatory work has also convinced me—as, 1 am sure, it would have anyone else—of the special characteristics of standbys at the operational level of practical detail and usage. Their special features, in my view, not only justify but also necessitate special contractual rules designed for standbys. As the constant comparison with the UCP clearly revealed, quite a few UCP Articles are inappropriate for standbys and quite a few issues of paramount importance in standby practice are not addressed at all in the UCP. While a similar disparity in practice exists between the standby and the independent guarantee (the bank or demand guarantee European style), this seems particularly, if not exclusively, true for those types of actual use (e.g. financial standby, direct-pay standby) hitherto found only extremely rarely in guarantee practice. For this and other reasons, including firmness of the undertaking, 1 would not be surprised to see not only standbys but also some demand guarantees issued subject to ISP98.

For a professional unifier of law, participation in the preparatory work was particularly satisfying because of its interconnection with other harmonization and reform efforts. In addition to the concordance with revised Article 5 UCC (the letter-of-credit law of the homeland of the standby) and the similarly close contact (and personal overlap) with the 1993 UCP revision task force, 1 am referring in particular to UNCITRAL's work which culminated in the adoption in 1995 by the General Assembly of the "United Nations Convention on Independent Guarantees and Stand-by Letters of Credit." The idea of preparing special operational rules for standbys was born during the extensive debates comparing national laws as well as the two instruments to be married by that Convention. Since bride and groom were presented there in all facets and critically scrutinized by their future in-laws, UNCITRAL's *travaux preparatoires* make for highly informative reading (as will future abstracts of court decisions to be published in UNCITRAL's case collection system called CLOUT; homepage: *www.un.or.at/uncitral*). It was gratifying to see the group preparing ISP98 refer continuously to the UNCITRAL Convention in order to ensure complete consistency. I must admit to special gratification by overhearing one of the world's leading letter of credit expert's remark to his banking colleague: "The more I look at this UN Convention, the more I really like it."

The above coordination or cooperation in the universal harmonization and modernization efforts is welcome and in fact crucial because of the (often neglected or ignored) interdependence between the two very different levels of legal norms: the contractual level, where such sets of rules like ISP98, UCP 500, or URDG become effective by agreement of the individual parties, and the statutory level, where internationally elaborated law like the UN Convention or domestic law (e.g. Art. 5 UCC) recognize and give full effect to the exercise of that party autonomy and regulate certain issues that can effectively be settled only at that level (e.g. standards of fraud exception, injunctive relief and other court matters). Therefore, ISP98 and the Convention supplement each other in an ideal manner and together lay the necessary basis for a smooth functioning of standby practice worldwide.

# ANNEX IV

© 1998 Institute of International Banking Law & Practice, Inc.

**All Rights Reserved. Reproduction of any part of this work by any means without the express written permission is prohibited.**

**Approved by the International Financial Services Association and the ICC Banking Commission**

## RULE 1: GENERAL PROVISIONS

**Scope, application, definitions, and interpretation of these Rules**

*1.01  Scope and application*

(a) These Rules are intended to be applied to standby letters of credit (including performance, financial, and direct pay standby letters of credit).

(b) A standby letter of credit or other similar undertaking, however named or described, whether for domestic or international use, may be made subject to these Rules by express reference to them.

(c) An undertaking subject to these Rules may expressly modify or exclude their application.

(d) An undertaking subject to these Rules is hereinafter referred to as a "standby".

*1.02  Relationship to law and other Rules*

(a) These Rules supplement the applicable law to the extent not prohibited by that law.

(b) These Rules supersede conflicting provisions in any other rules of practice to which a standby letter of credit is also made subject.

*1.03  Interpretative principles*

These Rules shall be interpreted as mercantile usage with regard for:

(a) integrity of standbys as reliable and efficient undertakings to pay;

(b) practice and terminology of banks and businesses in day-to-day transactions;

(c) consistency within the worldwide system of banking operations and commerce; and

(d) worldwide uniformity in their interpretation and application.

*1.04  Effect of the Rules*

Unless the context otherwise requires, or unless expressly modified or excluded, these Rules apply as terms and conditions incorporated into a standby, confirmation, advice, nomination, amendment, transfer, request for issuance, or other agreement of:

  (i)  the issuer;
 (ii)  the beneficiary to the extent it uses the standby;
(iii)  any advisor;
 (iv)  any confirmer;
  (v)  any person nominated in the standby who acts or agrees to act; and
 (vi)  the applicant who authorizes issuance of the standby or otherwise agrees to the application of these Rules.

*1.05  Exclusion of matters related to due issuance and fraudulent or abusive drawing*

These Rules do not define or otherwise provide for:

(a) power or authority to issue a standby;

(b) formal requirements for execution of a standby (e.g. a signed writing); or

(c) defenses to honour based on fraud, abuse, or similar matters.

These matters are left to applicable law.

### *General principles*

*1.06  Nature of standbys*

(a) A standby is an irrevocable, independent, documentary, and binding undertaking when issued and need not so state.

(b) Because a standby is irrevocable, an issuer's obligations under a standby cannot be amended or cancelled by the issuer except as provided in the standby or as consented to by the person against whom the amendment or cancellation is asserted.

(c) Because a standby is independent, the enforceability of an issuer's obligations under a standby does not depend on:

   (i)  the issuer's right or ability to obtain reimbursement from the applicant;
  (ii)  the beneficiary's right to obtain payment from the applicant;
 (iii)  a reference in the standby to any reimbursement agreement or underlying transaction; or
  (iv)  the issuer's knowledge of performance or breach of any reimbursement agreement or underlying transaction.

(d) Because a standby is documentary, an issuer's obligations depend on the presentation of documents and an examination of required documents on their face.

(e) Because a standby or amendment is binding when issued, it is enforceable against an issuer whether or not the applicant authorized its issuance, the issuer received a fee, or the beneficiary received or relied on the standby or the amendment.

*1.07  Independence of the issuer-beneficiary relationship*

An issuer's obligations toward the beneficiary are not affected by the issuer's rights and obligations toward the applicant under any applicable agreement, practice, or law.

*1.08  Limits to responsibilities*

An issuer is not responsible for:

(a) performance or breach of any underlying transaction;

(b) accuracy, genuineness, or effect of any document presented under the standby;

*(c)* action or omission of others even if the other person is chosen by the issuer or nominated person; or

*(d)* observance of law or practice other than that chosen in the standby or applicable at the place of issuance.

*Terminology*

1.09  *Defined terms*

In addition to the meanings given in standard banking practice and applicable law, the following terms have or include the meanings indicated below:

*(a)  Definitions*

"Applicant" is a person who applies for issuance of a standby or for whose account it is issued, and includes (i) a person applying in its own name but for the account of another person or (ii) an issuer acting for its own account.

"Beneficiary" is a named person who is entitled to draw under a standby. See Rule 1.11*(c)*(ii).

"Business day" means a day on which the place of business at which the relevant act is to be performed is regularly open; and "Banking day" means a day on which the relevant bank is regularly open at the place at which the relevant act is to be performed.

"Confirmer" is a person who, upon an issuer's nomination to do so, adds to the issuer's undertaking its own undertaking to honour a standby. See Rule 1.11*(c)*(i).

"Demand" means, depending on the context, either a request to honour a standby or a document that makes such request.

"Document" means a draft, demand, document of title, investment security, invoice, certificate of default, or any other representation of fact, law, right, or opinion, that upon presentation (whether in a paper or electronic medium), is capable of being examined for compliance with the terms and conditions of a standby.

"Drawing" means, depending on the context, either a demand presented or a demand honoured.

"Expiration date" means the latest day for a complying presentation provided in a standby.

"Person" includes a natural person, partnership, corporation, limited liability company, government agency, bank, trustee, and any other legal or commercial association or entity.

"Presentation" means, depending on the context, either the act of delivering documents for examination under a standby or the documents so delivered.

"Presenter" is a person who makes a presentation as or on behalf of a beneficiary or nominated person.

"Signature" includes any symbol executed or adopted by a person with a present intent to authenticate a document.

*(b)  Cross references*

"Amendment"—Rule 2.06

"Advice"—Rule 2.05

"Approximately" ("About" or "Circa")—Rule 3.08*(f)*

"Assignment of Proceeds"—Rule 6.06

"Automatic amendment"—Rule 2.06*(a)*

"Copy"—Rule 4.15*(d)*

"Cover instructions"—Rule 5.08

"Honour"—Rule 2.01

"Issuer"—Rule 2.01

"Multiple presentations"—Rule 3.08*(b)*

"Nominated person"—Rule 2.04

"Non-documentary conditions"—Rule 4.11

"Original"—Rule 4.15*(b)* and *(c)*

"Partial drawing"—Rule 3.08*(a)*

"Standby"—Rule 1.01*(d)*

"Transfer"—Rule 6.01

"Transferee beneficiary"—Rule 1.11*(c)*(ii)

"Transfer by operation of law"—Rule 6.11

*(c)  Electronic presentations*

The following terms in a standby providing for or permitting electronic presentation shall have the following meanings unless the context otherwise requires:

"Electronic record" means:
  (i)  a record (information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form);
  (ii) communicated by electronic means to a system for receiving, storing, re-transmitting, or otherwise processing information (data, text, images, sounds, codes, computer programs, software, databases, and the like); and
  (iii) capable of being authenticated and then examined for compliance with the terms and conditions of the standby.

"Authenticate" means to verify an electronic record by generally accepted procedure or methodology in commercial practice:
  (i)  the identity of a sender or source, and
  (ii) the integrity of or errors in the transmission of information content.

The criteria for assessing the integrity of information in an electronic record is whether the information has remained complete and unaltered, apart from the addition of any endorsement and any change which arises in the normal course of communication, storage, and display.

"Electronic signature" means letters, characters, numbers, or other symbols in electronic form, attached to or logically associated with an electronic record that are executed or adopted by a party with present intent to authenticate an electronic record.

"Receipt" occurs when:
  (i)  an electronic record enters in a form capable of being processed by the information system designated in the standby, or
  (ii) an issuer retrieves an electronic record sent to an information system other than that designated by the issuer.

*1.10   Redundant or otherwise undesirable terms*

(a)   A standby should not or need not state that it is:

(i)   unconditional or abstract (if it does, it signifies merely that payment under it is conditioned solely on presentation of specified documents);

(ii)   absolute (if it does, it signifies merely that it is irrevocable);

(iii)   primary (if it does, it signifies merely that it is the independent obligation of the issuer);

(iv)   payable from the issuer's own funds (if it does, it signifies merely that payment under it does not depend on the availability of applicant funds and is made to satisfy the issuer's own independent obligation);

(v)   clean or payable on demand (if it does, it signifies merely that it is payable upon presentation of a written demand or other documents specified in the standby).

(b)   A standby should not use the term "and/or" (if it does it means either or both).

(c)   The following terms have no single accepted meaning:

(i)   and shall be disregarded:
"callable",
"divisible",
"fractionable",
"indivisible", and
"transmissible".

(ii)   and shall be disregarded unless their context gives them meaning:
"assignable",
"evergreen",
"reinstate", and
"revolving".

*1.11   Interpretation of these Rules*

(a)   These Rules are to be interpreted in the context of applicable standard practice.

(b)   In these Rules, "standby letter of credit" refers to the type of independent undertaking for which these Rules were intended, whereas "standby" refers to an undertaking subjected to these Rules.

(c)   Unless the context otherwise requires:

(i)   "Issuer" includes a "confirmer" as if the confirmer were a separate issuer and its confirmation were a separate standby issued for the account of the issuer;

(ii)   "Beneficiary" includes a person to whom the named beneficiary has effectively transferred drawing rights ("transferee beneficiary");

(iii)   "Including" means "including but not limited to";

(iv)   "A or B" means "A or B or both"; "either A or B" means "A or B, but not both"; and "A and B" means "both A and B";

(v)   Words in the singular number include the plural, and in the plural include the singular; and

(vi)   Words of the neuter gender include any gender.

(d)   (i)   Use of the phrase "unless a standby otherwise states" or the like in a rule emphasizes that the text of the standby controls over the rule;

(ii)   Absence of such a phrase in other rules does not imply that other rules have priority over the text of the standby;

(iii)   Addition of the term "expressly" or "clearly" to the phrase "unless a standby otherwise states" or the like emphasizes that the rule should be excluded or modified only by wording in the standby that is specific and unambiguous; and

(iv)   While the effect of all of these Rules may be varied by the text of the standby, variations of the effect of some of these Rules may disqualify the standby as an independent undertaking under applicable law.

(e)   The phrase "stated in the standby" or the like refers to the actual text of a standby (whether as issued or effectively amended) whereas the phrase "provided in the standby" or the like refers to both the text of the standby and these Rules as incorporated.

RULE 2:   OBLIGATIONS

*2.01   Undertaking to honour by issuer and any confirmer to beneficiary*

(a)   An issuer undertakes to the beneficiary to honour a presentation that appears on its face to comply with the terms and conditions of the standby in accordance with these Rules supplemented by standard standby practice.

(b)   An issuer honours a complying presentation made to it by paying the amount demanded of it at sight, unless the standby provides for honour:

(i)   by acceptance of a draft drawn by the beneficiary on the issuer, in which case the issuer honours by:

(a)   timely accepting the draft; and

(b)   thereafter paying the holder of the draft on presentation of the accepted draft on or after its maturity.

(ii)   by deferred payment of a demand made by the beneficiary on the issuer, in which case the issuer honours by:

(a)   timely incurring a deferred payment obligation; and

(b)   thereafter paying at maturity.

(iii)   by negotiation, in which case the issuer honours by paying the amount demanded at sight without recourse.

(c)   An issuer acts in a timely manner if it pays at sight, accepts a draft, or undertakes a deferred payment obligation (or if it gives notice of dishonour) within the time permitted for examining the presentation and giving notice of dishonour.

(d)   (i)   A confirmer undertakes to honour a complying presentation made to it by paying the amount demanded of it at sight or, if the standby so states, by another method of honour consistent with the issuer's undertaking.

(ii)   If the confirmation permits presentation to the issuer, then the confirmer undertakes also to honour upon the issuer's wrongful dishonour by performing as if the presentation had been made to the confirmer.

(iii)   If the standby permits presentation to the confirmer, then the issuer undertakes also to honour upon the confirmer's wrongful dishonour by performing as if the presentation had been made to the issuer.

(e)   An issuer honours by paying in immediately available funds in the currency designated in the standby unless the standby states it is payable by:

Case 1:20-cv-08157-GBD   Document 24-9   Filed 12/23/20   Page 9 of 16

**586**  Yearbook of the United Nations Commission on International Trade Law, 2000, vol. XXXI

    (i)    payment of a monetary unit of account, in which case the undertaking is to pay in that unit of account; or

    (ii)   delivery of other items of value, in which case the undertaking is to deliver those items.

### 2.02 Obligation of different branches, agencies, or other offices

For the purposes of these Rules, an issuer's branch, agency, or other office acting or undertaking to act under a standby in a capacity other than as issuer is obligated in that capacity only and shall be treated as a different person.

### 2.03 Conditions to issuance

A standby is issued when it leaves an issuer's control unless it clearly specifies that it is not then "issued" or "enforceable". Statements that a standby is not "available", "operative", "effective", or the like do not affect its irrevocable and binding nature at the time it leaves the issuer's control.

### 2.04 Nomination

*(a)* A standby may nominate a person to advise, receive a presentation, effect a transfer, confirm, pay, negotiate, incur a deferred payment obligation, or accept a draft.

*(b)* Nomination does not obligate the nominated person to act except to the extent that the nominated person undertakes to act.

*(c)* A nominated person is not authorized to bind the person making the nomination.

### 2.05 Advice of standby or amendment

*(a)* Unless an advice states otherwise, it signifies that:

    (i)    the advisor has checked the apparent authenticity of the advised message in accordance with standard letter of credit practice; and

    (ii)   the advice accurately reflects what has been received.

*(b)* A person who is requested to advise a standby and decides not to do so should notify the requesting party.

### 2.06 When an amendment is authorized and binding

*(a)* If a standby expressly states that it is subject to "automatic amendment" by an increase or decrease in the amount available, an extension of the expiration date, or the like, the amendment is effective automatically without any further notification or consent beyond that expressly provided for in the standby. (Such an amendment may also be referred to as becoming effective "without amendment".)

*(b)* If there is no provision for automatic amendment, an amendment binds:

    (i)    the issuer when it leaves the issuer's control; and

    (ii)   the confirmer when it leaves the confirmer's control, unless the confirmer indicates that it does not confirm the amendment.

*(c)* If there is no provision for automatic amendment:

    (i)    the beneficiary must consent to the amendment for it to be binding;

    (ii)   the beneficiary's consent must be made by an express communication to the person advising the amendment unless the beneficiary presents documents which comply with the standby as amended and which would not comply with the standby prior to such amendment; and

    (iii)  an amendment does not require the applicant's consent to be binding on the issuer, the confirmer, or the beneficiary.

*(d)* Consent to only part of an amendment is a rejection of the entire amendment.

### 2.07 Routing of amendments

*(a)* An issuer using another person to advise a standby must advise all amendments to that person.

*(b)* An amendment or cancellation of a standby does not affect the issuer's obligation to a nominated person that has acted within the scope of its nomination before receipt of notice of the amendment or cancellation.

*(c)* Non-extension of an automatically extendable (renewable) standby does not affect an issuer's obligation to a nominated person who has acted within the scope of its nomination before receipt of a notice of non-extension.

## RULE 3:  PRESENTATION

### 3.01 Complying presentation under a standby

A standby should indicate the time, place and location within that place, person to whom, and medium in which presentation should be made. If so, presentation must be so made in order to comply. To the extent that a standby does not so indicate, presentation must be made in accordance with these Rules in order to be complying.

### 3.02 What constitutes a presentation?

The receipt of a document required by and presented under a standby constitutes a presentation requiring examination for compliance with the terms and conditions of the standby even if not all of the required documents have been presented.

### 3.03 Identification of standby

*(a)* A presentation must identify the standby under which the presentation is made.

*(b)* A presentation may identify the standby by stating the complete reference number of the standby and the name and location of the issuer or by attaching the original or a copy of the standby.

*(c)* If the issuer cannot determine from the face of a document received that it should be processed under a standby or cannot identify the standby to which it relates, presentation is deemed to have been made on the date of identification.

### 3.04 Where and to whom complying presentation made?

*(a)* To comply, a presentation must be made at the place and any location at that place indicated in the standby or provided in these Rules.

*(b)* If no place of presentation to the issuer is indicated in the standby, presentation to the issuer must be made at the place of business from which the standby was issued.

*(c)* If a standby is confirmed, but no place for presentation is indicated in the confirmation, presentation for the purpose of obligating the confirmer (and the issuer) must be made at the place of business of the confirmer from which the confirmation was issued or to the issuer.

*(d)* If no location at a place of presentation is indicated (such as department, floor, room, station, mail stop, post office box, or other location), presentation may be made to:

   (i)   the general postal address indicated in the standby;
   (ii)   any location at the place designated to receive deliveries of mail or documents; or
   (iii)   any person at the place of presentation actually or apparently authorized to receive it.

### 3.05   When timely presentation made?

*(a)*   A presentation is timely if made at any time after issuance and before expiry on the expiration date.

*(b)*   A presentation made after the close of business at the place of presentation is deemed to have been made on the next business day.

### 3.06   Complying medium of presentation

*(a)*   To comply, a document must be presented in the medium indicated in the standby.

*(b)*   Where no medium is indicated, to comply a document must be presented as a paper document, unless only a demand is required, in which case:

   (i)   a demand that is presented via S.W.I.F.T., tested telex, or other similar authenticated means by a beneficiary that is a S.W.I.F.T. participant or a bank complies; otherwise
   (ii)   a demand that is not presented as a paper document does not comply unless the issuer permits, in its sole discretion, the use of that medium.

*(c)*   A document is not presented as a paper document if it is communicated by electronic means even if the issuer or nominated person receiving it generates a paper document from it.

*(d)*   Where presentation in an electronic medium is indicated, to comply a document must be presented as an electronic record capable of being authenticated by the issuer or nominated person to whom it is presented.

### 3.07   Separateness of each presentation

*(a)*   Making a non-complying presentation, withdrawing a presentation, or failing to make any one of a number of scheduled or permitted presentations does not waive or otherwise prejudice the right to make another timely presentation or a timely re-presentation whether or not the standby prohibits partial or multiple drawings or presentations.

*(b)*   Wrongful dishonour of a complying presentation does not constitute dishonour of any other presentation under a standby or repudiation of the standby.

*(c)*   Honour of a non-complying presentation, with or without notice of its non-compliance, does not waive requirements of a standby for other presentations.

### 3.08   Partial drawing and multiple presentations; amount of drawings

*(a)*   A presentation may be made for less than the full amount available ("partial drawing").

*(b)*   More than one presentation ("multiple presentations") may be made.

*(c)*   The statement "partial drawings prohibited" or a similar expression means that a presentation must be for the full amount available.

*(d)*   The statement "multiple drawings prohibited" or a similar expression means that only one presentation may be made and honoured but that it may be for less than the full amount available.

*(e)*   If a demand exceeds the amount available under the standby, the drawing is discrepant. Any document other than the demand stating an amount in excess of the amount demanded is not discrepant for that reason.

*(f)*   Use of "approximately", "about", "circa", or a similar word permits a tolerance not to exceed 10 per cent more or 10 per cent less of the amount to which such word refers.

### 3.09   Extend or pay

A beneficiary's request to extend the expiration date of the standby or, alternatively, to pay the amount available under it:

*(a)*   is a presentation demanding payment under the standby, to be examined as such in accordance with these Rules; and

*(b)*   implies that the beneficiary:
   (i)   consents to the amendment to extend the expiry date to the date requested;
   (ii)   requests the issuer to exercise its discretion to seek the approval of the applicant and to issue that amendment;
   (iii)   upon issuance of that amendment, retracts its demand for payment; and
   (iv)   consents to the maximum time available under these Rules for examination and notice of dishonour.

### 3.10   No notice of receipt of presentation

An issuer is not required to notify the applicant of receipt of a presentation under the standby.

### 3.11   Issuer waiver and applicant consent to waiver of presentation rules

In addition to other discretionary provisions in a standby or these Rules, an issuer may, in its sole discretion, without notice to or consent of the applicant and without effect on the applicant's obligations to the issuer, waive:

*(a)*   the following Rules and any similar terms stated in the standby which are primarily for the issuer's benefit or operational convenience:
   (i)   treatment of documents received, at the request of the presenter, as having been presented at a later date (Rule 3.02);
   (ii)   identification of a presentation to the standby under which it is presented (Rule 3.03*(a)*);
   (iii)   where and to whom presentation is made (Rule 3.04*(b), (c),* and *(d)*), except the country of presentation stated in the standby; or
   (iv)   treatment of a presentation made after the close of business as if it were made on the next business day (Rule 3.05*(b)*).

*(b)*   the following Rule but not similar terms stated in the standby:
   (i)   a required document dated after the date of its stated presentation (Rule 4.06); or
   (ii)   the requirement that a document issued by the beneficiary be in the language of the standby (Rule 4.04).

*(c)*   the following Rule relating to the operational integrity of the standby only in so far as the bank is in fact dealing with the true beneficiary:

   acceptance of a demand in an electronic medium (Rule 3.06*(b)*).

Waiver by the confirmer requires the consent of the issuer with respect to paragraphs *(b)* and *(c)* of this Rule.

Case 1:20-cv-08157-GBD Document 24-9 Filed 12/23/20 Page 11 of 16

588 Yearbook of the United Nations Commission on International Trade Law, 2000, vol. XXXI

*3.12 Original standby lost, stolen, mutilated, or destroyed*

*(a)* If an original standby is lost, stolen, mutilated, or destroyed, the issuer need not replace it or waive any requirement that the original be presented under the standby.

*(b)* If the issuer agrees to replace an original standby or to waive a requirement for its presentation, it may provide a replacement or copy to the beneficiary without affecting the applicant's obligations to the issuer to reimburse, but, if it does so, the issuer must mark the replacement or copy as such. The issuer may, in its sole discretion, require indemnities satisfactory to it from the beneficiary and assurances from nominated persons that no payment has been made.

*Closure on expiry date*

*3.13 Expiration date on a non-business day*

*(a)* If the last day for presentation stated in a standby (whether stated to be the expiration date or the date by which documents must be received) is not a business day of the issuer or nominated person where presentation is to be made, then presentation made there on the first following business day shall be deemed timely.

*(b)* A nominated person to whom such a presentation is made must so notify the issuer.

*3.14 Closure on a business day and authorization of another reasonable place for presentation*

*(a)* If on the last business day for presentation the place for presentation stated in a standby is for any reason closed and presentation is not timely made because of the closure, then the last day for presentation is automatically extended to the day occurring thirty calendar days after the place for presentation re-opens for business, unless the standby otherwise provides.

*(b)* Upon or in anticipation of closure of the place of presentation, an issuer may authorize another reasonable place for presentation in the standby or in a communication received by the beneficiary. If it does so, then

  (i)  presentation must be made at that reasonable place; and
  (ii) if the communication is received fewer than thirty calendar days before the last day for presentation and for that reason presentation is not timely made, the last day for presentation is automatically extended to the day occurring thirty calendar days after the last day for presentation.

RULE 4:   EXAMINATION

*4.01 Examination for compliance*

*(a)* Demands for honour of a standby must comply with the terms and conditions of the standby.

*(b)* Whether a presentation appears to comply is determined by examining the presentation on its face against the terms and conditions stated in the standby as interpreted and supplemented by these Rules which are to be read in the context of standard standby practice.

*4.02 Non-examination of extraneous documents*

Documents presented which are not required by the standby need not be examined and, in any event, shall be disregarded for purposes of determining compliance of the presentation. They may without responsibility be returned to the presenter or passed on with the other documents presented.

*4.03 Examination for inconsistency*

An issuer or nominated person is required to examine documents for inconsistency with each other only to the extent provided in the standby.

*4.04 Language of documents*

The language of all documents issued by the beneficiary is to be that of the standby.

*4.05 Issuer of documents*

Any required document must be issued by the beneficiary unless the standby indicates that the document is to be issued by a third person or the document is of a type that standard standby practice requires to be issued by a third person.

*4.06 Date of documents*

The issuance date of a required document may be earlier but not later than the date of its presentation.

*4.07 Required signature on a document*

*(a)* A required document need not be signed unless the standby indicates that the document must be signed or the document is of a type that standard standby practice requires be signed.

*(b)* A required signature may be made in any manner that corresponds to the medium in which the signed document is presented.

*(c)* Unless a standby specifies:
  (i)  the name of a person who must sign a document, any signature or authentication will be regarded as a complying signature.
  (ii) the status of a person who must sign, no indication of status is necessary.

*(d)* If a standby specifies that a signature must be made by:
  (i)   a named natural person without requiring that the signer's status be identified, a signature complies that appears to be that of the named person;
  (ii)  a named legal person or government agency without identifying who is to sign on its behalf or its status, any signature complies that appears to have been made on behalf of the named legal person or government agency; or
  (iii) a named natural person, legal person, or government agency requiring the status of the signer be indicated, a signature complies which appears to be that of the named natural person, legal person, or government agency and indicates its status.

*4.08 Demand document implied*

If a standby does not specify any required document, it will still be deemed to require a documentary demand for payment.

*4.09 Identical wording and quotation marks*

If a standby requires:

*(a)* a statement without specifying precise wording, then the wording in the document presented must appear to convey the same meaning as that required by the standby;

*(b)* specified wording by the use of quotation marks, blocked wording, or an attached exhibit or form, the typographical errors in spelling, punctuation, spacing, or the like that are apparent when read in context are not required to be duplicated and blank lines or spaces for data may be completed in any manner not inconsistent with the standby; or

Case 1:20-cv-08157-GBD   Document 24-9   Filed 12/23/20   Page 12 of 16

*(c)* specified wording by the use of quotation marks, blocked wording, or an attached exhibit or form, and also provides that the specified wording be "exact" or "identical", then the wording in the documents presented must duplicate the specified wording, including typographical errors in spelling, punctuation, spacing and the like, as well as blank lines and spaces for data must be exactly reproduced.

*4.10   Applicant approval*

A standby should not specify that a required document be issued, signed, or counter-signed by the applicant. However, if the standby includes such a requirement, the issuer may not waive the requirement and is not responsible for the applicant's withholding of the document or signature.

*4.11   Non-documentary terms or conditions*

*(a)* A standby term or condition which is non-documentary must be disregarded whether or not it affects the issuer's obligation to treat a presentation as complying or to treat the standby as issued, amended, or terminated.

*(b)* Terms or conditions are non-documentary if the standby does not require presentation of a document in which they are to be evidenced and if their fulfillment cannot be determined by the issuer from the issuer's own records or within the issuer's normal operations.

*(c)* Determinations from the issuer's own records or within the issuer's normal operations include determinations of:

 (i) when, where, and how documents are presented or otherwise delivered to the issuer;

 (ii) when, where, and how communications affecting the standby are sent or received by the issuer, beneficiary, or any nominated person;

 (iii) amounts transferred into or out of accounts with the issuer; and

 (iv) amounts determinable from a published index (e.g. if a standby provides for determining amounts of interest accruing according to published interest rates).

*(d)* An issuer need not re-compute a beneficiary's computations under a formula stated or referenced in a standby except to the extent that the standby so provides.

*4.12   Formality of statements in documents*

*(a)* A required statement need not be accompanied by a solemnity, officialization, or any other formality.

*(b)* If a standby provides for the addition of a formality to a required statement by the person making it without specifying form or content, the statement complies if it indicates that it was declared, averred, warranted, attested, sworn under oath, affirmed, certified, or the like.

*(c)* If a standby provides for a statement to be witnessed by another person without specifying form or content, the witnessed statement complies if it appears to contain a signature of a person other than the beneficiary with an indication that the person is acting as a witness.

*(d)* If a standby provides for a statement to be counter-signed, legalized, visaed, or the like by a person other than the beneficiary acting in a governmental, judicial, corporate, or other representative capacity without specifying form or content, the statement complies if it contains the signature of a person other than the beneficiary and includes an indication of that person's representative capacity and the organization on whose behalf the person has acted.

*4.13   No responsibility to identify beneficiary*

Except to the extent that a standby requires presentation of an electronic record:

*(a)* a person honouring a presentation has No obligation to the applicant to ascertain the identity of any person making a presentation or any assignee of proceeds;

*(b)* payment to a named beneficiary, transferee, an acknowledged assignee, successor by operation of law, to an account or account number stated in the standby or in a cover instruction from the beneficiary or nominated person fulfils the obligation under the standby to effect payment.

*4.14   Name of acquired or merged issuer or confirmer*

If the issuer or confirmer is reorganized, merged, or changes its name, any required reference by name to the issuer or confirmer in the documents presented may be to it or its successor.

*4.15   Original, copy, and multiple documents*

*(a)* A presented document must be an original.

*(b)* Presentation of an electronic record, where an electronic presentation is permitted or required, is deemed to be an "original".

*(c)* (i) A presented document is deemed to be an original unless it appears on its face to have been reproduced from an original.

 (ii) A document which appears to have been reproduced from an original is deemed to be an original if the signature or authentication appears to be original.

*(d)* A standby that requires presentation of a "copy" permits presentation of either an original or copy unless the standby states that only a copy be presented or otherwise addresses the disposition of all originals.

*(e)* If multiples of the same document are requested, only one must be an original unless:

 (i) "duplicate originals" or "multiple originals" are requested in which case all must be originals; or

 (ii) "two copies", "two-fold", or the like are requested in which case either originals or copies may be presented.

### Standby document types

*4.16   Demand for payment*

*(a)* A demand for payment need not be separate from the beneficiary's statement or other required document.

*(b)* If a separate demand is required, it must contain:

 (i) a demand for payment from the beneficiary directed to the issuer or nominated person;

 (ii) a date indicating when the demand was issued;

 (iii) the amount demanded; and

 (iv) the beneficiary's signature.

*(c)* A demand may be in the form of a draft or other instruction, order, or request to pay. If a standby requires presentation of a "draft" or "bill of exchange", that draft or bill of exchange need not be in negotiable form unless the standby so states.

*4.17   Statement of default or other drawing event*

If a standby requires a statement, certificate, or other recital of a default or other drawing event and does not specify content, the document complies if it contains:

Case 1:20-cv-08157-GBD Document 24-9 Filed 12/23/20 Page 13 of 16

**590** **Yearbook of the United Nations Commission on International Trade Law, 2000, vol. XXXI**

*(a)* a representation to the effect that payment is due because a drawing event described in the standby has occurred;

*(b)* a date indicating when it was issued; and

*(c)* the beneficiary's signature.

*4.18 Negotiable documents*

If a standby requires presentation of a document that is transferable by endorsement and delivery without stating whether, how, or to whom endorsement must be made, then the document may be presented without endorsement, or, if endorsed, the endorsement may be in blank and, in any event, the document may be issued or negotiated with or without recourse.

*4.19 Legal or judicial documents*

If a standby requires presentation of a government-issued document, a court order, an arbitration award, or the like, a document or a copy is deemed to comply if it appears to be:
  (i) issued by a government agency, court, tribunal, or the like;
  (ii) suitably titled or named;
  (iii) signed;
  (iv) dated; and
  (v) originally certified or authenticated by an official of a government agency, court, tribunal, or the like.

*4.20 Other documents*

*(a)* If a standby requires a document other than one whose content is specified in these Rules without specifying the issuer, data content, or wording, a document complies if it appears to be appropriately titled or to serve the function of that type of document under standard standby practice.

*(b)* A document presented under a standby is to be examined in the context of standby practice under these Rules even if the document is of a type (such as a commercial invoice, transport documents, insurance documents or the like) for which the Uniform Customs and Practice for Documentary Credits contains detailed rules.

*4.21 Request to issue separate undertaking*

If a standby requests that the beneficiary of the standby issue its own separate undertaking to another (whether or not the standby recites the text of that undertaking):

*(a)* the beneficiary receives no rights other than its rights to draw under the standby even if the issuer pays a fee to the beneficiary for issuing the separate undertaking;

*(b)* neither the separate undertaking nor any documents presented under it need be presented to the issuer; and

*(c)* if originals or copies of the separate undertaking or documents presented under it are received by the issuer although not required to be presented as a condition to honour of the standby:
  (i) the issuer need not examine, and, in any event, shall disregard their compliance or consistency with the standby, with the beneficiary's demand under the standby, or with the beneficiary's separate undertaking; and
  (ii) the issuer may without responsibility return them to the presenter or forward them to the applicant with the presentation.

RULE 5: NOTICE, PRECLUSION, AND DISPOSITION OF DOCUMENTS

*5.01 Timely notice of dishonour*

*(a)* Notice of dishonour must be given within a time after presentation of documents which is not unreasonable.
  (i) Notice given within three business days is deemed to be not unreasonable and beyond seven business days is deemed to be unreasonable.
  (ii) Whether the time within which notice is given is unreasonable does not depend upon an imminent deadline for presentation.
  (iii) The time for calculating when notice of dishonour must be given begins on the business day following the business day of presentation.
(iv) Unless a standby otherwise expressly states a shortened time within which notice of dishonour must be given, the issuer has No obligation to accelerate its examination of a presentation.

*(b)* (i) The means by which a notice of dishonour is to be given is by telecommunication, if available, and, if not, by another available means which allows for prompt notice.
  (ii) If notice of dishonour is received within the time permitted for giving the notice, then it is deemed to have been given by prompt means.

*(c)* Notice of dishonour must be given to the person from whom the documents were received (whether the beneficiary, nominated person, or person other than a delivery person) except as otherwise requested by the presenter.

*5.02 Statement of grounds for dishonour*

A notice of dishonour shall state all discrepancies upon which dishonour is based.

*5.03 Failure to give timely notice of dishonour*

*(a)* Failure to give notice of a discrepancy in a notice of dishonour within the time and by the means specified in the standby or these rules precludes assertion of that discrepancy in any document containing the discrepancy that is retained or re-presented, but does not preclude assertion of that discrepancy in any different presentation under the same or a separate standby.

*(b)* Failure to give notice of dishonour or acceptance or acknowledgement that a deferred payment undertaking has been incurred obligates the issuer to pay at maturity.

*5.04 Notice of expiry*

Failure to give notice that a presentation was made after the expiration date does not preclude dishonour for that reason.

*5.05 Issuer request for applicant waiver without request by presenter*

If the issuer decides that a presentation does not comply and if the presenter does not otherwise instruct, the issuer may, in its sole discretion, request the applicant to waive non-compliance or otherwise to authorize honour within the time available for giving notice of dishonour but without extending it. Obtaining the applicant's waiver does not obligate the issuer to waive non-compliance.

*5.06   Issuer request for applicant waiver upon request of presenter*

If, after receipt of notice of dishonour, a presenter requests that the presented documents be forwarded to the issuer or that the issuer seek the applicant's waiver:

(a)   no person is obligated to forward the discrepant documents or seek the applicant's waiver;

(b)   the presentation to the issuer remains subject to these Rules unless departure from them is expressly consented to by the presenter; and

(c)   if the documents are forwarded or if a waiver is sought:

  (i)   the presenter is precluded from objecting to the discrepancies notified to it by the issuer;

  (ii)   the issuer is not relieved from examining the presentation under these Rules;

  (iii)   the issuer is not obligated to waive the discrepancy even if the applicant waives it; and

  (iv)   the issuer must hold the documents until it receives a response from the applicant or is requested by the presenter to return the documents, and if the issuer receives no such response or request within ten business days of its notice of dishonour, it may return the documents to the presenter.

*5.07   Disposition of documents*

Dishonoured documents must be returned, held, or disposed of as reasonably instructed by the presenter. Failure to give notice of the disposition of documents in the notice of dishonour does not preclude the issuer from asserting any defense otherwise available to it against honour.

*5.08   Cover instructions/transmittal letter*

(a)   Instructions accompanying a presentation made under a standby may be relied on to the extent that they are not contrary to the terms or conditions of the standby, the demand, or these Rules.

(b)   Representations made by a nominated person accompanying a presentation may be relied upon to the extent that they are not contrary to the terms or conditions of a standby or these Rules.

(c)   Notwithstanding receipt of instructions, an issuer or nominated person may pay, give notice, return the documents, or otherwise deal directly with the presenter.

(d)   A statement in the cover letter that the documents are discrepant does not relieve the issuer from examining the presentation for compliance.

*5.09   Applicant notice of objection*

(a)   An applicant must timely object to an issuer's honour of a noncomplying presentation by giving timely notice by prompt means.

(b)   An applicant acts timely if it objects to discrepancies by sending a notice to the issuer stating the discrepancies on which the objection is based within a time after the applicant's receipt of the documents which is not unreasonable.

(c)   Failure to give a timely notice of objection by prompt means precludes assertion by the applicant against the issuer of any discrepancy or other matter apparent on the face of the documents received by the applicant, but does not preclude assertion of that objection to any different presentation under the same or a different standby.

RULE 6:   TRANSFER, ASSIGNMENT, AND TRANSFER BY OPERATION OF LAW

**Transfer of drawing rights**

*6.01   Request to transfer drawing rights*

Where a beneficiary requests that an issuer or nominated person honour a drawing from another person as if that person were the beneficiary, these Rules on transfer of drawing rights ("transfer") apply.

*6.02   When drawing rights are transferable*

(a)   A standby is not transferable unless it so states.

(b)   A standby that states that it is transferable without further provision means that drawing rights:

  (i)   may be transferred in their entirety more than once;

  (ii)   may not be partially transferred; and

  (iii)   may not be transferred unless the issuer (including the confirmer) or another person specifically nominated in the standby agrees to and effects the transfer requested by the beneficiary.

*6.03   Conditions to transfer*

An issuer of a transferable standby or a nominated person need not effect a transfer unless:

(a)   it is satisfied as to the existence and authenticity of the original standby; and

(b)   the beneficiary submits or fulfils:

  (i)   a request in a form acceptable to the issuer or nominated person including the effective date of the transfer and the name and address of the transferee;

  (ii)   the original standby;

  (iii)   verification of the signature of the person signing for the beneficiary;

  (iv)   verification of the authority of the person signing for the beneficiary;

  (v)   payment of the transfer fee; and

  (vi)   any other reasonable requirements.

*6.04   Effect of transfer on required documents*

Where there has been a transfer of drawing rights in their entirety:

(a)   a draft or demand must be signed by the transferee beneficiary; and

(b)   the name of the transferee beneficiary may be used in place of the name of the transferor beneficiary in any other required document.

*6.05   Reimbursement for payment based on a transfer*

An issuer or nominated person paying under a transfer pursuant to Rule 6.03*(a)*, *(b)*(i), and *(b)*(ii) is entitled to reimbursement as if it had made payment to the beneficiary.

**Acknowledgement of assignment of proceeds**

*6.06   Assignment of proceeds*

Where an issuer or nominated person is asked to acknowledge a beneficiary's request to pay an assignee all or part of any proceeds of the beneficiary's drawing under the standby, these Rules on acknowledgement of an assignment of proceeds apply except where applicable law otherwise requires.

*6.07   Request for acknowledgement*

(a) Unless applicable law otherwise requires, an issuer or nominated person

    (i)   is not obligated to give effect to an assignment of proceeds which it has not acknowledged; and

    (ii)  is not obligated to acknowledge the assignment.

(b) If an assignment is acknowledged:

    (i)   the acknowledgement confers no rights with respect to the standby to the assignee who is only entitled to the proceeds assigned, if any, and whose rights may be affected by amendment or cancellation; and

    (ii)  the rights of the assignee are subject to:

        (a) the existence of any net proceeds payable to the beneficiary by the person making the acknowledgement;

        (b) rights of nominated persons and transferee beneficiaries;

        (c) rights of other acknowledged assignees; and

        (d) any other rights or interests that may have priority under applicable law.

*6.08   Conditions to acknowledgement of assignment of proceeds*

An issuer or nominated person may condition its acknowledgement on receipt of:

(a) the original standby for examination or notation;

(b) verification of the signature of the person signing for the beneficiary;

(c) verification of the authority of the person signing for the beneficiary;

(d) an irrevocable request signed by the beneficiary for acknowledgement of the assignment that includes statements, covenants, indemnities, and other provisions which may be contained in the issuer's or nominated person's required form requesting acknowledgement of assignment, such as:

    (i)   the identity of the affected drawings if the standby permits multiple drawings;

    (ii)  the full name, legal form, location, and mailing address of the beneficiary and the assignee;

    (iii) details of any request affecting the method of payment or delivery of the standby proceeds;

    (iv)  limitation on partial assignments and prohibition of successive assignments;

    (v)   statements regarding the legality and relative priority of the assignment; or

    (vi)  right of recovery by the issuer or nominated person of any proceeds received by the assignee that are recoverable from the beneficiary;

(e) payment of a fee for the acknowledgement; and

(f) fulfilment of other reasonable requirements.

*6.09   Conflicting claims to proceeds*

If there are conflicting claims to proceeds, then payment to an acknowledged assignee may be suspended pending resolution of the conflict.

*6.10   Reimbursement for payment based on an assignment*

An issuer or nominated person paying under an acknowledged assignment pursuant to Rule 6.08(a) and (b) is entitled to reimbursement as if it had made payment to the beneficiary. If the beneficiary is a bank, the acknowledgement may be based solely upon an authenticated communication.

*Transfer by operation of law*

*6.11   Transferee by operation of law*

Where an heir, personal representative, liquidator, trustee, receiver, successor corporation, or similar person who claims to be designated by law to succeed to the interests of a beneficiary presents documents in its own name as if it were the authorized transferee of the beneficiary, these Rules on transfer by operation of law apply.

*6.12   Additional document in event of drawing in successor's name*

A claimed successor may be treated as if it were an authorized transferee of a beneficiary's drawing rights in their entirety if it presents an additional document or documents which appear to be issued by a public official or representative (including a judicial officer) and indicate:

(a) that the claimed successor is the survivor of a merger, consolidation, or similar action of a corporation, limited liability company, or other similar organization;

(b) that the claimed successor is authorized or appointed to act on behalf of the named beneficiary or its estate because of an insolvency proceeding;

(c) that the claimed successor is authorized or appointed to act on behalf of the named beneficiary because of death or incapacity; or

(d) that the name of the named beneficiary has been changed to that of the claimed successor.

*6.13   Suspension of obligations upon presentation by successor*

An issuer or nominated person which receives a presentation from a claimed successor which complies in all respects except for the name of the beneficiary:

(a) may request in a manner satisfactory as to form and substance:

    (i)   a legal opinion;

    (ii)  an additional document referred to in Rule 6.12 (Additional document in event of drawing in successor's name) from a public official;

    (iii) statements, covenants, and indemnities regarding the status of the claimed successor as successor by operation of law;

    (iv)  payment of fees reasonably related to these determinations; and

    (v)   anything which may be required for a transfer under Rule 6.03 (Conditions to transfer) or an acknowledgement of assignment of proceeds under Rule 6.08 (Conditions to acknowledgement of assignment of proceeds);

but such documentation shall not constitute a required document for purposes of expiry of the standby.

(b) Until the issuer or nominated person receives the requested documentation, its obligation to honour or give notice of dishonour is suspended, but any deadline for presentation of required documents is not thereby extended.

*6.14   Reimbursement for payment based on a transfer by operation of law*

An issuer or nominated person paying under a transfer by operation of law pursuant to Rule 6.12 (Additional document in event of drawing in successor's name) is entitled to reimbursement as if it had made payment to the beneficiary.

## RULE 7:   CANCELLATION

*7.01   When an irrevocable standby is cancelled or terminated*

A beneficiary's rights under a standby may not be cancelled without its consent. Consent may be evidenced in writing or by an action such as return of the original standby in a manner which implies that the beneficiary consents to cancellation. A beneficiary's consent to cancellation is irrevocable when communicated to the issuer.

*7.02   Issuer's discretion regarding a decision to cancel*

Before acceding to a beneficiary's authorization to cancel and treating the standby as cancelled for all purposes, an issuer may require in a manner satisfactory as to form and substance:

   *(a)*   the original standby;

   *(b)*   verification of the signature of the person signing for the beneficiary;

   *(c)*   verification of the authorization of the person signing for the beneficiary;

   *(d)*   a legal opinion;

   *(e)*   an irrevocable authority signed by the beneficiary for cancellation that includes statements, covenants, indemnities, and similar provisions contained in a required form;

   *(f)*   satisfaction that the obligation of any confirmer has been cancelled;

   *(g)*   satisfaction that there has not been a transfer or payment by any nominated person; and

   *(h)*   any other reasonable measure.

## RULE 8:   REIMBURSEMENT OBLIGATIONS

*8.01   Right to reimbursement*

   *(a)*   Where payment is made against a complying presentation in accordance with these Rules, reimbursement must be made by:
      (i)   an applicant to an issuer requested to issue a standby; and
      (ii)   an issuer to a person nominated to honour or otherwise give value.

   *(b)*   An applicant must indemnify the issuer against all claims, obligations, and responsibilities (including attorney's fees) arising out of:
      (i)   the imposition of law or practice other than that chosen in the standby or applicable at the place of issuance;
      (ii)   the fraud, forgery, or illegal action of others; or
      (iii)   the issuer's performance of the obligations of a confirmer that wrongfully dishonours a confirmation.

   *(c)*   This Rule supplements any applicable agreement, course of dealing, practice, custom or usage providing for reimbursement or indemnification on lesser or other grounds.

*8.02   Charges for fees and costs*

   *(a)*   An applicant must pay the issuer's charges and reimburse the issuer for any charges that the issuer is obligated to pay to persons nominated with the applicant's consent to advise, confirm, honour, negotiate, transfer, or to issue a separate undertaking.

   *(b)*   An issuer is obligated to pay the charges of other persons:
      (i)   if they are payable in accordance with the terms of the standby; or
      (ii)   if they are the reasonable and customary fees and expenses of a person requested by the issuer to advise, honour, negotiate, transfer, or to issue a separate undertaking, and they are unrecovered and unrecoverable from the beneficiary or other presenter because no demand is made under the standby.

*8.03   Refund of reimbursement*

A nominated person that obtains reimbursement before the issuer timely dishonours the presentation must refund the reimbursement with interest if the issuer dishonours. The refund does not preclude the nominated person's wrongful dishonour claims.

*8.04   Bank-to-bank reimbursement*

Any instruction or authorization to obtain reimbursement from another bank is subject to the International Chamber of Commerce standard rules for bank-to-bank reimbursements.

## RULE 9:   TIMING

*9.01   Duration of standby*

   A standby must:

   *(a)*   contain an expiry date; or

   *(b)*   permit the issuer to terminate the standby upon reasonable prior notice or payment.

*9.02   Effect of expiration on nominated person*

The rights of a nominated person that acts within the scope of its nomination are not affected by the subsequent expiry of the standby.

*9.03   Calculation of time*

   *(a)*   A period of time within which an action must be taken under these Rules begins to run on the first business day following the business day when the action could have been undertaken at the place where the action should have been undertaken.

   *(b)*   An extension period starts on the calendar day following the stated expiry date even if either day falls on a day when the issuer is closed.

*9.04   Time of day of expiration*

If no time of day is stated for expiration, it occurs at the close of business at the place of presentation.

*9.05   Retention of standby*

Retention of the original standby does not preserve any rights under the standby after the right to demand payment ceases.

## RULE 10:   SYNDICATION/PARTICIPATION

*10.01   Syndication*

If a standby with more than one issuer does not state to whom presentation may be made, presentation may be made to any issuer with binding effect on all issuers.

*10.02   Participation*

   *(a)*   Unless otherwise agreed between an applicant and an issuer, the issuer may sell participations in the issuer's rights against the applicant and any presenter and may disclose relevant applicant information in confidence to potential participants.

   *(b)*   An issuer's sale of participations does not affect the obligations of the issuer under the standby or create any rights or obligations between the beneficiary and any participant.