

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                         :

TC SKYWARD AVIATION U.S., INC.,         :

                     Plaintiff,       :

                               :      MEMORANDUM DECISION
      -against-               :        AND ORDER

DEUTSCHE BANK AG, NEW YORK BRANCH, :     20 Civ. 8157 (GBD) (SLC)

                    Defendant.     :

                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GEORGE B. DANIELS, United States District Judge:

Plaintiff TC Skyward Aviation U.S., Inc. ("TC Skyward") brings this action for breach of

contract against Defendant Deutsche Bank AG, New York Branch ("DBNY") arising from

Defendant's dishonor of Plaintiff's draw on a letter of credit issued by Defendant. (Compl., ECF

No. 1, ¶ 1.) This case is before this Court on Defendant's motion to dismiss the Complaint pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Notice of Motion, ECF No. 14, 1), and

Plaintiff's cross-motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil

Procedure and Local Civil Rule 56.1, (Notice of Motion, ECF No. 23, 1).  Plaintiff also requests

that this Court treat Defendant's motion to dismiss as one for summary judgment, pursuant to Rule

12(d) of the Federal Rules of Civil Procedure, on the grounds that Defendant supported its motion

to dismiss with evidence from outside the pleadings. (TC Skyward's Memorandum of Law in

Support of MSJ ("Pl.'s Brief"), ECF No. 25, 11-12).[1]

---

[1] For a district court to consider materials outside the pleadings at the motion-to-dismiss stage, it must "treat
the motion as one for summary judgment under Rule 56 and give all parties a reasonable opportunity to
present all the material that is pertinent to the motion." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir.
2016) (vacating dismissal where district court relied of affidavits submitted by defendant).  "A
plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary

For the reasons below, Defendant's converted motion for summary judgment is DENIED and Plaintiff's cross-motion for summary judgment is GRANTED.

## I. FACTUAL BACKGROUND[2]

Plaintiff TC Skyward is a Delaware Corporation specializing in aviation leasing and financing. (Compl. ¶ 2.) Defendant Deutsche Bank is a financial services corporation licensed by the State of New York Department of Financial Services. (*Id.* 3.) Non-party TAM Linhas Aereas, S.A. ("TAM") is a company organized under the laws of Brazil with its principal place of business in Sao Paulo, and non-party 777 Leasing, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Florida. (Compl. ¶¶ 4-5.)

## The Sale and Leaseback Agreement

On September 18, 2018, non-parties TAM and 777 Leasing executed a sale and leaseback agreement (the "SLBA"). (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1 Stmt."), ECF No. 26, ¶ 1.) Under the agreement, 777 Leasing agreed to purchase from, and lease back to, TAM an inventory of spare parts used by TAM for its operation of Boeing Model 777 aircraft ("Inventory"). (Pl.'s 56.1 Stmt. ¶ 2.) To fund the purchase, 777 Leasing entered into a financing agreement with Plaintiff TC Skyward, and others, granting Plaintiff a lien in the Inventory. (*Id.* ¶ 3.) On October 12, 2018,

---

prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (vacating dismissal where district court relied on draft contracts not in complaint) (emphasis in original). Here, Defendant submitted two letters from non-party TAM Linhas Aereas, S.A.'s counsel in support of its fraud affirmative defense. (Pl.'s 56.1 Stmt. ¶ 31-34.) The letters were not discussed in Plaintiff's Complaint, and referenced only once. (Compl. ¶ 37.) Since Plaintiff did not rely on the letters in its Complaint, and they were not attached as exhibits to the Complaint, the letters are outside the pleadings. Therefore, this Court will treat Defendant's motion as one for summary judgment in order to consider all the evidence.

[2] The facts are drawn from Plaintiff's Rule 56.1 Statement, ("Pl.'s 56.1 Stmt."), ECF No. 26, and Defendant's Counterstatement to Plaintiff's 56.1 Statement, ("Def.'s Counterstmt."), ECF No. 33, unless otherwise noted.

TAM executed a notice and acknowledgement of those liens in the Inventory ("TAM Loan Notice"). (*Id.* ¶ 4.) In accordance with the SLBA, TAM caused Deutsche Bank to issue an irrevocable letter of credit ("LOC") in favor of Plaintiff. (*Id.* ¶ 13.)

**The LOC**

The LOC is dated October 12, 2018 and identifies Plaintiff as the beneficiary. (Exhibit 3 ("Letter of Credit"), ECF No. 24-3, 1.) It states, in pertinent part, that

> BY ORDER OF TAM LINHAS AEREAS, S.A. . . . WE DEUTSCH BANK AG, NEW YORK BRANCH HEREBY ISSUE IN YOUR FAVOR OUR IRREVOCABLE STANDBY LETTER OF CREDIT . . . FOR USD 14,520,000.00 . . . AVAILABLE AGAINST THE PRESENTATION OF THE FOLLOWING:
>
> A) ORIGINAL LETTER OF CREDIT ALONG WITH ALL AMENDMENTS (IF ANY)
> B) BENEFICIARY'S STATEMENT PURPORTEDLY SIGNED BY AN AUTHORIZED SIGNATORY STATING:
>
> QUOTE
>
> 1) THE AMOUNT OF USD X HAS BECOME DUE AND PAYABLE BY THE APPLICANT UNDER THE LEASE . . .
>
> UNQUOTE

(Letter of Credit 1.) According to the terms of the LOC, Plaintiff did not need to submit any additional documentation in support of its draw request. (*Id.*)

**TAM's Default**

The LOC states that Plaintiff was entitled to draw on it when money became due and payable by TAM under the SLBA. (Pl.'s 56.1 Stmt. ¶ 18.) In the event of default, the SLBA states that Plaintiff was entitled to draw on the LOC. (Exhibit 6 ("SLBA"), ECF No. 24-6, §15.2.) Specifically, the SLBA states,

> The occurrence of any Event of Default will constitute a repudiation (but subject to Lessor's rights hereunder, not a termination) of this

Agreement by Lessee (whether the occurrence of any such Event of Default is voluntary or involuntary or occurs by operation of law or pursuant to or in compliance with any judgment, decree, or order of any court or any order, rule or regulation of any government entity. If an Event of Default occurs, Lessor may at its option (and without prejudice to any of its other rights and remedies under this Agreement, at law, in equity and/or otherwise), at any time thereafter (without notice to Lessee except as required under applicable law) and subject to compliance with mandatory requirements of law:

. . .

(6) require that Lessee pay to Lessor, and Lessee will be liable for and immediately pay to Lessor, and/or proceed by appropriate court action or actions to recover any or all of the following amounts: . . . (b) an amount equal to Lessor's reasonably anticipated enforcement and remarketing costs (including, but not limited to, legal fees), costs of settlement of financing raised by Lessor for the transaction, and losses and expenses arising from any deficiencies in redelivery condition of the Components . . . and/or (7) *draw down the Letter of Credit in an amount up to the Letter of Credit Draw Value* indicated in Annex J for the last instalment of Rent received by Lessor.

(*Id.*) (emphasis added). Section 15.1 of the SLBA defines an event of default,

*An event of default will have occurred under this Agreement if:* . . . (6) *a petition in bankruptcy*, concurso mercantil, insolvency, moratorium, suspension of payments, reorganization, or other like proceeding (including "falência", "recuperação extrajudicial" and "recuperação judicial" under Brazilian law) *is filed by or against Lessee* . . . (any of the foregoing being an "Event of Default").

(*Id.* § 15.1) (emphasis added).

## TC Skyward's Draw Request

On July 9, 2020, TAM filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. (Pl.'s 56.1 Stmt. ¶ 23.) On July 10, 2020, Plaintiff sent DBNY a letter drawing on the LOC. (*Id.* ¶ 24.) The LOC draw value at the

time of the draw, as identified in Annexes E and J, was $12,020,000. (*Id.* ¶¶ 24.) Plaintiff's draw

letter ("Draw Request") included the following statement,

> The amount of USD 12,020,000.00 has become due and payable by the Applicant under the Lease. The original Letter of Credit is enclosed.

(*Id.* ¶ 27.)

Defendant first responded to Plaintiff's letter by email on July 15, 2020 ("July 15 Email"),

confirming receipt of the documents: "[t]he documents are well received. We will provide you

with an update of our examination by latest tomorrow."  (Pl.'s 56.1 Stmt. ¶ 29.)  The next day,

Defendant followed up on its email to plaintiff ("July 16 Email"), stating that,

> [T]he presented documents are LC confirm [*sic*] and we have claimed reimbursement from Applicant.  As the LC terms are silent, payment will be effected latest Jul [*sic*] 20, 2020.

(Pl.'s 56.1 Stmt. ¶ 30.)

Shortly thereafter, on July 17, 2020, counsel for TAM and its parent company sent

Defendant DBNY a letter opposing the Draw Request ("July 17 Letter").  (Pl.'s 56.1 Stmt. ¶ 31.)

The July 17 Letter states, in relevant part, that,

> Contrary to TC Skyward's assertion in the Demand Letter, it is our understanding that the amount of USD$12,020,000.00 is not due and payable under the Letter of Credit and the related Sale and Lease Back Agreement for Boeing 777 Components, dated September 28, 2018 (collectively, and with any schedules of service, the "Agreement"). In fact, no amounts are due and payable under the Letter of Credit and the Agreement because it is our understanding that (1) TAM is current on its payment obligations under the Agreement and (2) TAM is not aware of any other event of default under the Agreement (and has received no notice of any such alleged default) other than TAM's filing for chapter 11 bankruptcy protection on July 9, 2020. *An event of default that arises solely by TAM's filing for bankruptcy protection is unenforceable under U.S. bankruptcy law as an impermissible ipso facto clause.* See 11 U.S.C. § 365(e)(1)(A)-(B) . . . .

> Because TAM is not in default under the Agreement (other
> than the unenforceable ipso facto provision), there is no basis for TC
> Skyward to submit a request to Deutsche Bank for payment pursuant
> to the Letter of Credit, and there is no basis for Deutsche Bank to
> honor such request. As such, TAM opposes Deutsche Bank's
> honoring the draw request because such draw is invalid under the
> plain language terms of the Letter of Credit.

(Pl.'s 56.1 Stmt. ¶¶ 31-32) (emphasis added).  On July 20, 2020, TAM and its parent company

wrote to Defendant for a second time ("July 20 Letter") to contest the validity of the Draw Request

and "request[ing] that DBNY dishonor the Demand Letter and deliver notice of such to TC

Skyward." (Pl.'s 56.1 Stmt. ¶ 33.)

DBNY wrote to TC Skyward on July 24, 2020, to inform Plaintiff that Defendant would

not honor the Draw Request ("Dishonor Letter"),

> The Applicant has advised us with respect to the Beneficiary's
> mandatory presented drawing statement that the draw amount
> allegedly "due and payable by the Applicant under the Lease" is in
> fact not owing, that the drawing statement is false, and that the
> drawing has no basis. The Applicant has further advised us that no
> amounts were then due and payable by the Applicant under the
> Lease, has demanded that we not honor the draw, and has stated that
> such honor would be wrongful. Based on our understanding of the
> relevant facts, we have decided not to honor the draw as we are
> entitled to do under New York Uniform Commercial Code Section
> 5-109(a)(2).

(Id. ¶¶ 36-37.) In its response on August 7, 2020 ("August 7 Letter"), counsel for Plaintiff objected

to DBNY's dishonor and stated its reasons for the Draw Request.  (Id. ¶¶ 38-39.)  Defendant

responded to the August 7 Letter on August 18, 2020 ("August 18 Letter"), defending its decision

to dishonor the Draw Request:

> The Drawing statement presented by the Beneficiary to DBNY
> stated that "The amount of USD 12,020,000.00 has become due and
> payable by the Applicant under the Lease." The Applicant, however,
> advised DBNY that such amount was not in fact owing and that the
> Drawing statement was therefore false. As best DBNY could
> determine, the Applicant was correct in its assertion. Accordingly,

6

> *DBNY concluded that it was entitled to reject the Drawing as an*
> *attempt by the Beneficiary to obtain over $12 million to which it had*
> *no right at the time, by a knowing material misstatement of the*
> *amount due and payable by the Applicant under the Lease, which*
> *we concluded constituted material fraud as to either or both DBNY*
> *or the Applicant. . . .*

(Pl.'s 56.1 Stmt. ¶ 42) (emphasis added).  Plaintiff responded to Defendant's letter on August 27,

2020.  (*Id.* ¶¶ 43-44).  In its letter, Plaintiff explained that

> The Draw was based on financing amounts being immediately due
> and payable by TAM under §15.2(6)(b) of the [SLBA] –
> specifically, "costs of settlement of financing raised by Lessor for
> the transaction," – which was further buttressed by the provisions of
> § 15.2(7) and Annex J specifying the exact amount then drawable
> by [Plaintiff] under the [SLBA Letter of Credit].

*Id.*  Plaintiff filed its Complaint on October 1, 2020. Compl. (¶ 1.)

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  "An issue of

fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material when it "might affect the

outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue

of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  Once

the moving party satisfies this burden, the nonmoving party must then come forward with "specific

facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  The party opposing

summary judgment "must do more than simply show that there is some metaphysical doubt as to

the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita*

7

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (internal citations omitted). When there are cross-motions for summary judgment, a court must use the same standards as for individual motions. *See Aviall Inc. v. Ryder System Inc.,* 913 F.Supp. 826, 828 (S.D.N.Y.1996) (citing *Heublein Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993)).

Actions concerning letters of credit are well suited to determination by motion for summary judgment because they normally present solely legal issues relating to an exchange of documents. *Banque Worms, New York Branch v. Banque Commerciale Privee*, 679 F. Supp. 1173, 1178 (S.D.N.Y.), *aff'd*, 849 F.2d 787 (2d Cir. 1988).

## III.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR WRONGFUL DISHONOR

Letters of credit are "entirely separate from common law contract concepts" and have several distinct features [that] characterize [them]." *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 682 (2d Cir. 1983). A letter of credit is an "irrevocable promise to pay the [ ] beneficiary when the latter presents certain documents . . . that conform with the terms of the credit [letter]." *United States v. Calderon*, 944 F.3d 72, 79 (2d Cir. 2019). Its purpose is to facilitate international trade by reducing the risk of nonpayment in cases where credit is extended by "interposing a known and solvent institution's [] credit" for that of an unknown and potentially insolvent institution. *Voest-Alpine Int'l Corp.*, 707 F.2d at 682. "[O]ne of the expected advantages

8

and essential purposes of a letter of credit is that the beneficiary will be able to rely on assured, prompt payment from a solvent party; necessarily, a part of this expectation of ready payment is that there will be a minimum of litigation and judicial interference, and this is one of the reasons for the value of the letter of credit device in financial transactions." *Ultra Scope Int'l, Inc. v. Extebank*, 158 Misc. 2d 117, 125, 599 N.Y.S.2d 361, 367 (Sup. Ct. 1992), *aff'd,* 192 A.D.2d 479, 598 N.Y.S.2d 699 (1993) *(citing New York Life Insurance Co. v. Hartford Nat'l Bank & Trust Co.,* 173 Conn. 492, 499, 378 A.2d 562, 566 [1977]).

"Ordinarily there are three separate and distinct contracts involved in a letter of credit transaction; the contract of the bank with its customer whereby it agrees to issue the letter of credit, the letter of credit itself and the contract of sale between the buyer who is also the person who procured the bank to issue the letter of credit and the seller who accepts and acts under the letter of credit by drawing drafts thereunder." *Venizelos, S. A. v. Chase Manhattan Bank*, 425 F.2d 461, 464–65 (2d Cir. 1970). A letter of credit is independent from the underlying transaction that gave rise to it. *Id.* The issuing "bank's payment obligation to the beneficiary is primary, direct and completely independent of any claims which may arise in the underlying sale of goods transaction." *Voest-Alpine Int'l Corp.*, 707 F.2d at 682. "It is the complete separation between the underlying commercial transaction and the letter of credit that gives the letter its utility in financing transactions." *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982). "This independence principle is predicated upon the fundamental policy that a letter of credit would lose its commercial vitality if before honoring drafts the issuer could look beyond the terms of the credit to the underlying contractual controversy or performance between its customer and the beneficiary." *Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 485 (S.D.N.Y. 2015).

9

Additionally, letters of credit are strictly enforced pursuant to their terms. Where a beneficiary's draw request "compl[ies] with the terms of the [letter of] credit, the issuer's duty to pay is absolute, regardless of whether the buyer-account party complains that the goods are nonconforming." *Alaska Textile Co.*, 982 F.2d at 816. "This rule of strict compliance finds justification in the bank's role in the transaction being ministerial, and to require it to determine the substantiality of discrepancies would be inconsistent with its function." *Calderon*, 944 F.3d at 79.

## A. Fraud Defense

Fraud is the well-established exception to the rules of independence and strict compliance under letter of credit law. Dishonor due to fraud is proper where a draw "has no basis in fact" and represents a 'fraud in the transaction,' or "where a drawdown would amount to an outright fraudulent practice by the beneficiary." *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 747 (2d Cir. 1999) (citation omitted). However, "because the smooth operation of international commerce requires that requests for payment under letters of credit not be routinely obstructed by pre-payment litigation, the fraud exception to the independence principle 'is a narrow one.'" *Archer Daniels Midland Co. v. JP Morgan Chase Bank, N.A.*, No. 11 Civ. 0988 (JSR), 2011 WL 855936, at *5 (S.D.N.Y. Mar. 8, 2011).

In its motion, Defendant argues that it was informed by the contracting party that Plaintiff had no colorable basis to draw on the letter of credit, therefore the Draw Request was materially fraudulent, and as such, DBNY was entitled to reject the Draw Request under UCC 5-109.[3]

---

[3] Defendant does not dispute that Plaintiff's Draw Request otherwise strictly complied with the terms of the letter of credit. (Def.'s Reply 7) ("It is undisputed that TC Skyward sought to draw $12.02 million by representing to DBNY that $12.02 million was due and payable by TAM under the lease. That draw statement facially complied with the terms of the LC. The problem is that the statement was entirely false.") Nor does it assert that Plaintiff intentionally misrepresented any statement besides the of fact in

10

(Defendant's Brief in Support of MTD ("Def's Brief"), ECF No. 15, 18-19.) In opposition, Plaintiff argues that Defendant improperly relied on non-party TAM's interpretation of the underlying contract to decide that the Draw Request was materially fraudulent, contrary to settled letter of credit law. (Plaintiff's Memorandum of Law in Support of MSJ ("Pl.s' Brief"), ECF No. 25, 8.) Plaintiff also argues that disputes as to the legal interpretation of a contract do not give rise to a defense of fraud against a claim for wrongful dishonor. (*Id.* 22.)

Defendant has failed to show that the Draw Request had no basis in fact nor did the Draw Request amount to an outright fraudulent practice, therefore Defendant's affirmative defense of fraud fails.

## B. Defendant Has Failed to Show Plaintiff's Draw Request Has No Colorable Basis in Fact

Under the 'fraud in the transaction' defense, "dishonor [of a facially conforming draw request] is permissible only where the beneficiary's claim [] is clearly untenable." *3Com Corp.*, 171 F.3d at 747. Similarly, a drawdown amounts to 'fraud in the transaction' where the beneficiary "has no basis in fact and thus the drawer has no bona fide claim to payment at all." *Id.* (*quoting Roman Ceramics Corp. v. Peoples Nat. Bank*, 714 F.2d 1207, 1213 (3d Cir. 1983)). *See e.g., Archer Daniels Midland Co.*, 2011 WL 855936, at *5 (drawdown had no basis in fact where beneficiary misrepresented laboratory report confirming compliance of goods to draw on letter of credit on basis of breach). Dishonor is permissible due to fraud where the beneficiary "attempts to draw on [a] standby [letter of credit] when there [i]s no plausible or colorable basis under the contract.". *Ultra Scope Int'l, Inc.*, 599 N.Y.S.2d at 366, *aff'd,* 598 N.Y.S.2d at 699 (*quoting Itek Corp. v. First Nat. Bank of Bos.*, 730 F.2d 19, 25 (1st Cir. 1984)).

---

its Draw Request. (*Id.* 16) ("TC Skyward's submission of an entirely false document in support of its draw on the LC constituted 'material fraud' regardless of its intention or state of mind.")

Here, Defendant argues that the Draw Request has no basis in fact because: (1) TAM sent Defendant two letters stating that no amount was due and payable under the lease and that Plaintiff's draw was in bad faith, (Def.'s. Brief 15); (2) Defendant's own reading of the lease did not support Plaintiff's conclusion that the entire letter of credit draw value became due and payable by TAM upon an event of default, (*id.* 16); and (3) even if Section 15.2 of the SLBA makes certain amounts due and payable following TAM's filing for bankruptcy, that provision of the lease is unenforceable pursuant to 11 U.S.C § 365(e), (Def.'s. Brief 17).

Defendant's arguments are unpersuasive. To begin, Defendant has failed to identify any contract provision or fact that clearly precludes the Draw Request. Defendant asserts that the statement "$12,020,000 is due and payable by Applicant under the Lease" is a factual statement, and that it was entirely false. (Def.'s Brief 14.) However, the draw statement is based on Plaintiff's legal interpretation of the underlying contract and is not an assertion of fact. *See Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, No. 13 CIV. 2576 (LGS), 2017 WL 1133425, at *3 (S.D.N.Y. Mar. 24, 2017), *aff'd sub nom. Int'l Cards Co. Ltd. v. Mastercard Int'l Inc*, 741 F. App'x 41 (2d Cir. 2018) ("Any allegation in a pleading regarding how to interpret the contract is legal argument, not an 'assertion of fact.'") As such, Defendant's arguments are not based on any misrepresentation of fact, therefore precluding a finding of fraud. *Contra Archer Daniels Midland Co.*, 2011 WL 855936, at *5 (beneficiary misrepresented the results of a laboratory report), *Nostrum Laboratories Inc.*, 2009 WL 6318144 (contract precluded finding of default because applicant cured within required timeframe)

Defendant's reasons for concluding that the Draw Request was entirely false are also unpersuasive. First, under Second Circuit law, DBNY was not entitled to reject a facially conforming draw based on its relationship and communication with TAM. *Alaska Textile Co.*,

982 F.2d at 816. Additionally, TAM's threat of non-reimbursement of the draw amounts did not

absolve Defendant of its absolute duty to pay on a facially conforming drawdown. *Id.* Defendant

was required to pay on the Draw Request even "where the insolvency [or refusal] of the account

party renders reimbursement impossible." *Semetex Corp.*, 853 F. Supp. at 770. Moreover, TAM's

letters to DBNY opposing the Draw Request rely exclusively on TAM's legal interpretation of the

SLBA and of 11 U.S.C. § 365(e) of the Bankruptcy Code. (Pl.'s 56.1 Stmt. ¶¶ 31-33.) The letters

did not contain any facts from which DBNY could reasonably have independently concluded that

the Draw Request had no basis in fact.

Second, TAM and DBNY's disagreement with Plaintiff's interpretation of the SLBA, also

fails since a difference of opinion regarding the beneficiary's rights and obligations in an

underlying contract, are insufficient to show fraud in the transaction. *See Recon/Optical, Inc. v.

Gov't of Israel*, 816 F.2d 854, 858 (2d Cir. 1987) (rejecting fraud defense based on differing

contract interpretations because "[w]hether or not its views of the merits of these disputes is

correct, there is no evidence that [beneficiary] has acted in bad faith or impeded [applicant's]

continued performance . . . far from constituting fraud, a drawdown by [beneficiary] under the

circumstances is entirely consistent with the parties' contractual intent"); *3Com Corp.*, 171 F.3d

at 747 (rejecting fraud defense where "a legitimate dispute exists concerning the meaning of the

required statement"). Moreover, whether the beneficiary to a letter of credit misstated the terms

of the underlying contract "is normally beside the point, for to prevent the beneficiary from

obtaining the money while the court decides the 'underlying contract' question may deprive the

beneficiary of the very benefit for which he bargained, namely that any such underlying contract

dispute will be 'resolved while he is in possession of the money.'" *Ground Air Transfer, Inc. v.

Westates Airlines, Inc.*, 899 F.2d 1269, 1273 (1st Cir. 1990). The Draw Request was not false

merely because it conflicted with TAM and DBNY's interpretation of the SLBA, therefore Defendant's dishonor on that basis was improper.

Third, DBNY fails to present any authority to support its conclusion that the Bankruptcy Code can be invoked to protect a third-party obligor from paying on a letter of credit where, as here, the debtor's rights under the contract are not being terminated or modified, and the bankruptcy estate does not have access to the letter of credit funds. *See ACE Am. Ins. Co. v. Bank of the Ozarks*, No. 11 Civ. 3146 (PGG), 2014 WL 4953566, at \*43 (S.D.N.Y. Sept. 30, 2014) ("… a letter of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate"). Also, the fact that this issue has not been addressed by the Second Circuit further weakens Defendant's argument that Plaintiff had no colorable basis to draw on the LOC based on § 15.2 of the SLBA on the grounds that the provision is an ipso facto clause, and unenforceable under to 11 U.S.C. § 365(e). (Def.'s Reply, ECF No. 31, 14.) Defendant's unsupported legal analysis regarding the effect of the bankruptcy code on the underlying contract was not a reasonable basis on which to conclude that the Draw Request has no colorable basis in fact.

As Defendant has failed to show that Plaintiff's Draw Request had no basis in fact, Defendant has failed to show that the Draw Request represented a fraud in the transaction.

### C. Defendant Fails to Show Plaintiff's Draw Request Amounts to an Outright Fraudulent Practice

Where a beneficiary's draw request complies with the strict terms of the letter of credit, "the issuer's duty to pay is absolute . . . ." *Alaska Textile Co.*, 982 F.2d at 816. An exception to the rule arises where there is "a clear showing of active intentional fraud [by the beneficiary]." *KMW Int'l v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 16 (2d Cir. 1979). Thus, "[a]n issuing bank may refuse to honor documents which 'appear on their face to comply with the letter of credit terms' but for which 'a required document . . . is forged or fraudulent or there is fraud in the

14

transaction.'" *Semetex Corp.*, 853 F. Supp. at 773. The fraud defense is available "only where intentional fraud is shown, not where the party alleges improper performance or breach of warranty." *Id.* "[A]bsent proof of intentional fraud on the part of the beneficiary," the issuing bank's "duty to pay upon the submission of documents which appear on their face to conform to the terms and conditions of the letter of credit is absolute," *ACE Am. Ins. Co.*, 2014 WL 4953566, at *14 (citing *Beyene v. Irving Tr. Co.*, 762 F.2d 4, 6 (2d Cir. 1985)).

The parties do not dispute the facial conformity of the Draw Request. (Def.'s Reply 7.) Defendant has not made a showing of intentional fraud. (*See infra* III. A-B.) Absent a showing of intentional fraud, Defendant had an absolute duty to pay on the Draw Request. *Alaska Textile Co.*, 982 F.2d at 816. Defendant has not made any such showing. Therefore, its fraud defense fails as a matter of law. *See e.g.*, *Semetex Corp.*, 853 F. Supp. at 771 (rejecting fraud defense where bank "failed to present evidence of fraudulent intent"), *aff'd*, 51 F.3d 13; *Recon/Optical, Inc.*, 816 F.2d at 858 (rejecting fraud defense where applicant and beneficiary disputed specific contract terms because bank failed to present proof that beneficiary acted in bad faith).

Despite its absence of proof regarding Plaintiff's intention, Defendant argues that it has nonetheless established an affirmative defense of fraud because "[a]s a matter of credit law, the falsity of [TC Skyward's draw] statement, regardless of TC Skyward's subjective intent, establishes that its request was 'materially fraudulent'." (Def.'s Reply 2). However, proof of intent is necessary to show that the Draw Request amounted to an 'outright fraudulent practice.' Defendant cites *Rockwell Int'l Sys., Inc. v. Citibank, N.A,* in support of its argument. 719 F.2d at 589. Defendant's reliance on *Rockwell* is misplaced. In that case, after looking at "the circumstances surrounding the transaction and the call to determine whether [beneficiary's] call amounted to an outright fraudulent practice," the court found that the beneficiary had frustrated

15

the applicant's completion of the contract by suspending its performance, and then sought to call

on the letter of credit obtained by the applicant to secure that performance. *Id.* While the Second

Circuit held that the applicant had established fraud and did not need to show "deceit" or

"malicious intent," it cabined its holding to similarly extreme situations:

> We think that the essence of the fraud exception is that 'the principle
> of the independence of [a] bank's obligation under the letter of credit
> should not be extended to protect' a party that behaves so as to
> prevent performance of the underlying obligation; the 'fraud'
> inheres in first causing the default and then attempting to reap the
> benefit of the guarantee. On this view of the fraud exception it is
> not necessary for [the applicant or issuing bank] to demonstrate that
> [the beneficiary] acted deceitfully or with malicious intent.

*Rockwell Int'l Sys., Inc.,* 719 F.2d at 589.

By contrast, in the instant case, no party has alleged that Plaintiff procured TAM's default

under the SLBA prior to submitting its draw request, and Defendant still must adduce proof of

Plaintiff's fraudulent intent to establish fraud based on outright fraudulent conduct. *Semetex

Corp.*, 853 F. Supp. at 771, *aff'd*, 51 F.3d 13.[4] As Defendant has failed to make such a showing,

DBNY has failed to show that Plaintiff's draw request amounted to an outright fraudulent practice.

Since Defendant has failed to show fraud, either in the underlying transaction or Plaintiff's

demand, Defendant's affirmative defense of fraud fails as a matter of law. Plaintiff is entitled to

summary judgment on its claim for wrongful dishonor.[5]

---

[4] Defendant's remaining authority is similarly inapposite since in those cases, like in Rockwell, fraud
could be inferred from the beneficiary's statements or actions. (Def.'s Reply 17-18.) *Emery-Waterhouse
Co. v. Rhode Island Hosp. Tr. Nat. Bank,* 757 F.2d 399, 405 (1st Cir. 1985) (beneficiary submitted draw
request after internally confirming that no draw amounts were due and payable); *Nostrum Laboratories
Inc. v. Martec USA, LLC,* No. 600364/2009, 2009 WL 6318144, at *6 (N.Y. Sup. Ct. Mar. 3, 2009) (after
applicant cured default, beneficiary misrepresented to the issuing bank that no payment had been made
and it was entitled to draw on the letter of credit); *Levin v. Meagher,* No. A103735, 2004 WL 1664864
(Cal. Ct. App. July 27, 2004) (beneficiary attempted to draw on a debt that was already paid).

[5] Defendant argues that summary judgment must also be denied because it is "entitled to discovery into TC
Skyward's records and communications and to depose its personnel regarding matters of knowledge and

## IV.   CONCLUSION

Defendant's converted motion for summary judgment, (ECF No. 14), is DENIED. Plaintiff's cross-motion for summary judgment, (ECF No. 23), is GRANTED.  The Clerk of Court is directed to close the motions, accordingly.


Dated: New York, New York
      August 31, 2021

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

---

intent." (Def.'s Reply 23.)  Having failed to present any facts that would support a claim that Plaintiff's draw request was intentionally fraudulent in its opening brief or reply, Defendant's new argument that it should be given the opportunity to conduct discovery in hopes of locating proof of fraudulent intent is not persuasive. *Caldarola*, 298 F.3d at 160 (2d Cir. 2002).